UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ROLANDO FELIX CARRAZCO, | ) | 1:10-cv-0001392-MJS |
| Petitioner, | ) | |
| v. | ) | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY |
| FISHER, Warden, | ) | |
| Respondent. | ) | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c). (ECF Nos. 3, 9.)

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On August 22, 2008, Petitioner pled no contest to California Penal Code § 273.5, corporal injury to a spouse or cohabitant, California Vehicle Code, § 20001, Subd. (a), leaving the scene of an accident with an injury, Penal Code Section 12022(b)(1), the use of a deadly weapon, an automobile, and Penal Code Section 12022.7(e), causing great bodily injury to the

victim. According to the police report, Petitioner ran over his girlfriend and mother of his child with his vehicle. Petitioner subsequently fled the scene. People v. Carrazco, No. F056728, 2009 Cal. App. Unpub. WL 2105277 at *4-6 (Cal. App. 5th Dist., July 17, 2009).

At the plea hearing the defendant was asked, "Have you given your attorney all the information you have about the case and been advised of the possible defenses you might have?" Petitioner replied "Yes." The court asked if Petitioner had enough time to speak with his attorney to which Petitioner answered "Yes." When asked if he was satisfied with this attorney's advice, Petitioner stated that he was satisfied. (Lodged Doc. 1, pp. 83-84.)

On October 20, 2008, Petitioner wrote a letter to the court requesting new counsel. A Marsden[1] hearing was held the next day. A partial transcript of the hearing reads as follows:

> THE COURT: All right. I guess my question is what's your problem with this attorney?
>
> THE DEFENDANT: Well, I don't want her. I don't want her . . . [S]he basically tied up my hands. She scared me. She said if I didn't take the offer, it would be life. Why do you scare me that way? Why did she do that with me. It was an accident.
>
> THE COURT: Looks like they made an offer to you. They are right. It can be pretty close to life if you were convicted of this by a jury. Looks like the DA made an offer to dismiss the most serious charges, and that's how you came up with the eight years.
>
> THE DEFENDANT: That's because they scared me. They basically tied my hands behind my back. They said if I didn't take it, I would be set up for life.
>
> THE COURT: You could be convicted of life. You could. They were telling you the truth.
>
> THE DEFENDANT: But I want the victim to come forward to state whatever she needs to say.
>
> THE COURT: Well, again, I'm here right now. The reason we're in chambers right now is you telling me what's wrong with this attorney. That's the only thing I want to talk about right now.
>
> THE DEFENDANT: Well, what I want, if she's not going to help me, I'd like to switch attorneys. I want to be helped. I want her to help me.

(Lodged Doc. 6, Ex. C.)

---

[1] People v. Marsden, 2 Cal.3d 118 (1970).

The court then found a breakdown in communication and appointed Petitioner with new counsel. (Id.)

On October 28, 2008, Petitioner, through his newly appointed counsel, made an oral motion to withdraw the plea. Counsel explained:

> [A]fter my discussions with Mr. Carrazco, is that while he was asked the question whether or not he was threatened in his transcript at the time he was taking the plea, he's indicating to me that he, indeed, was and it seems that the nature of the threat, as I was able to understand it, is that the lawyers, there was two of them, sort of confronted him with the fact that if he lost this case he'd be doing life in prison, which I think is the premeditated attempted murder charged . . . He took that as a threat. This was his first time ever, apparently, of being in any kind of serious trouble. . . So he's not accustomed to those procedures. He's not accustomed to hearing things like life in prison. And it just sort of really clouded his judgment, confused him. And so when they prepped him by scaring him, believing life in prison, and then they contrasted that with eight years, in his confusion he just sort of agreed to do this and was sort of robotically answering these questions, probably without really appreciating what he was actually saying.

(Lodged Doc. 2, at 7-10.)

The court denied the motion. On November 19, 2008, Petitioner was sentenced to eight years in state prison.

Petitioner directly appealed his sentence to the California Court of Appeal, Fifth Appellate District. The appeal was denied on July 17, 2009. (Lodged Doc. 6, Ex. F.)

Petitioner filed a writ of habeas corpus in the Tulare County Superior Court which was denied on June 10, 2009. (Lodged Doc. 4.)

On October 9, 2009, Petitioner then filed a writ in the Fifth Appellate District which was denied on December 10, 2009. (Lodged Doc. 7.)

Petitioner filed a similar writ with the California Supreme Court which was denied on June 17, 2010. (Lodged Doc. 8.)

On August 4, 2010, Petitioner filed the instant writ of habeas corpus.

## II. DISCUSSION

### A. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or

laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000). Petitioner's claims involve those guaranteed by the U.S. Constitution and arise from the Tulare County Superior Court of California, which is located within the jurisdiction of this court. 28 U.S.C. § 2241(d); 2254(a). Accordingly, the Court has jurisdiction over the action.

### B.      Legal Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Under AEDPA, an application for a writ of habeas corpus by a person in custody under a judgment of a state court may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n. 7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in state court proceedings if the state court's adjudication of the claim:

>  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
>  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

####         1.      Contrary to or an Unreasonable Application of Federal Law

A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-06). "AEDPA does not require state and federal courts to wait for some nearly identical factual pattern

before a legal rule must be applied. . . . The statue recognizes . . . that even a general standard may be applied in an unreasonable manner." Panetti v. Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted).  The "clearly established Federal law" requirement "does not demand more than a 'principle' or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009).  For a state decision to be an unreasonable application of clearly established federal law under § 2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle (or principles) to the issue before the state court. Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003).  A state court decision will involve an "unreasonable application of "federal law only if it is "objectively unreasonable." Id. at 75-76 (quoting Williams, 529 U.S. at 409-10); Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). In Harrington v. Richter, the Court further stresses that "an unreasonable application of federal law is different from an incorrect application of federal law."  131 S. Ct. 770, 785 (2011) (citing Williams, 529 U.S. at 410) (emphasis in original).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786 (citing Yarborough v. Alvarado, 541 U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts have in reading outcomes in case-by-case determinations."  Id.; Renico v. Lett, 130 S. Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. 111, 122, 129 S. Ct. 1411, 1419 (2009) (quoting Richter, 131 S. Ct. at 786).

### 2. Review of State Decisions

"Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the claim rest on the same grounds." See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This is referred to as the "look through" presumption.  Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198 (9th Cir. 2006). Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion, "does not require that there be an opinion from the state court explaining the state

court's reasoning." Richter, 131 S. Ct. at 784-85. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Id. ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

Richter instructs that whether the state court decision is reasoned and explained, or merely a summary denial, the approach to evaluating unreasonableness under § 2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786. Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. at 75). AEDPA "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." Id. To put it yet another way:

> As a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 786-87. The Court then explains the rationale for this rule, i.e., "that state courts are the principal forum for asserting constitutional challenges to state convictions." Id. at 787. It follows from this consideration that § 2254(d) "complements the exhaustion requirement and the doctrine of procedural bar to ensure that state proceedings are the central process, not just a preliminary step for later federal habeas proceedings." Id. (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977)).

### 3. Prejudicial Impact of Constitutional Error

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 121-22

1  (2007) (holding that the Brecht standard applies whether or not the state court recognized the
2  error and reviewed it for harmlessness).  Some constitutional errors, however, do not require
3  that the petitioner demonstrate prejudice.  See Arizona v. Fulminante, 499 U.S. 279, 310
4  (1991); United States v. Cronic, 466 U.S. 648, 659 (1984).  Furthermore, where a habeas
5  petition governed by AEDPA alleges ineffective assistance of counsel under Strickland v.
6  Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do
7  not engage in a separate analysis applying the Brecht standard.  Avila v. Galaza, 297 F.3d
8  911, 918, n. 7 (2002).  Musalin v. Lamarque, 555 F.3d at 834.

### III.     REVIEW OF PETITION

Petitioner raises claims for relief based on an involuntary guilty plea, ineffective assistance of counsel, and failure of the trial court to issue a certificate of probable cause.

### A.     Claim One: Voluntariness of the Guilty Plea

Petitioner contends that his guilty plea to corporal injury on a spouse/cohabitant was involuntary because: (1) He was not informed of the mens rea element of the charge; (2) He was threatened to enter into the plea agreement when his counsel told him he could face life in prison if he went to trial; and (3) A language barrier coerced his plea.

Due process does not require that Defendants be explicitly informed of the mens rea of the crime to which they are pleading at the plea hearing. In fact, The Supreme Court explained that "even without such an express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." Henderson v. Morgan 426 U.S. 637, 647 (1976).

The Supreme Court has subsequently applied the Henderson presumption to find a guilty plea voluntary under the Due Process Clause despite no mention in the plea colloquy of the mens rea element of the crime for which the plea was entered. See Marshall v. Lonberger, 459 U.S. 422, 436 (1983).

The Henderson presumption that defense counsel informed the prisoner of the elements of the charged offenses appears to arise unless some special circumstances are

1 present. For instance, in Henderson, the Court stated that "[t]his case is unique because the
2 trial judge found as a fact that the element of intent was not explained to [the accused]," and
3 because the accused had an "unusually low mental capacity." Henderson, 426 U.S. at 647.
4 In Tamayo-Reyes, the Henderson presumption was overcome by the fact that the accused did
5 not speak the same language as defense counsel, thus making the discussion of the charges
6 unlikely. Tamayo-Reyes v. Keeney, 926 F.2d 1492, 1495 (9th. Cir. 1991).

7 Upon review of the record, the state court was not unreasonable in finding Petitioner's
8 guilty plea was voluntary. Petitioner was adequately apprised of the nature of the charge to
9 which he pled guilty. The record reflects that Petitioner discussed the plea with his counsel.
10 At the plea agreement hearing, the court asked Petitioner: "Have you given your attorney all
11 the information you have about the case and been advised of the possible defenses you might
12 have?" Petitioner replied "Yes." Later in the hearing, the court asked Petitioner's attorney,
13 "Have you discussed with him his rights, defenses, and the possible consequences of his
14 plea?" Counsel answered "Yes."  It is true that Petitioner was never explicitly advised at his
15 plea hearing that the crime to which he was pleading was intentional. Yet, this is not required
16 to satisfy constitutional standards. Further, the record does not support Petitioner's contention
17 that he was unaware that the charge required intent. Petitioner never alleged a lack of notice
18 regarding the mens rea element of the charge before he was sentenced. Instead, throughout
19 Petitioner's Marsden hearing and during his motion to withdraw his plea, Petitioner's only claim
20 was that his counsel threatened him with a life sentence.

21 The record contradicts Petitioner's claim that he was threatened to enter into a plea
22 agreement. When Petitioner was asked at the plea hearing if he was threatened into entering
23 a guilty plea, he answered, "No." (Lodged Doc. 8, Ex. A, p. 5.) Petitioner claims the nature of
24 the threat was his attorney informing him that he could be sentenced to life in prison if
25 convicted of all charges. This statement did not constitute a threat, as Petitioner could have
26 received a life sentence if convicted on all charges.

27 Under Henderson, a presumption would arise that counsel informed Petitioner of the
28 elements of the charges against him, since there is no factual basis of any special

circumstances such as deficient mental capacity or a language barrier. Petitioner does not allege that he had trouble discussing his case with his attorney. He was assisted by an interpreter at his hearings, and the transcripts reveal that he understood the questions asked to him and the nature of the proceedings. Petitioner claims that the interpreter did not tell him at the plea hearing that he was pleading to an intentional crime. As stated before, due process does not require an explicit explanation of the crime's requisite intent at the plea hearing. Hence, Petitioner's guilty plea met constitutional standards.

### C.  Claims Two and Three: Ineffective Assistance of Counsel

In Petitioner's claims for ineffective assistance of counsel, he asserts that his first appointed counsel did not inform him of the elements of the charge to which he pled and that his second appointed counsel failed to make a substantive argument to withdrawal his plea.

#### 1.  State Court Opinion

The last reasoned state court decision is from the Tulare County Superior Court's July 31, 2009 decision denying Petitioner's habeas petition. The court explained:

> Petitioner has failed to state a basis for relief.
>
> Petitioner has failed to provide adequate and proper notice.
>
> Even had he given proper and adequate notice his writ would fail.
> Petitioner failed to raise the issues raised in his writ in a timely manner, There is no statute of limitations for raising a habeas claim. Rather, a claim should be asserted in a habeas petitioner "as promptly as the circumstances allow." **(In re Clark (1993) 5 Cal.4th 750, 765 n.5.)** Generally, a court will not consider an issue on habeas review if the claim was not raised in a timely manner. (Clark, supra.) Delay is measured from the time the petitioner knew, or reasonable should have known, of the information offered in support of the claim and the legal basis for the claim. **(In Re Robbins (1998) 18 Cal.4th 770,** 780.) A court will not consider the merits of a delayed petition unless the petitioner provides an adequate justification for his failure to raise the claims in a timely filed petitioner, or demonstrates that a fundamental miscarriage of justice occurred as a result of the proceedings leading to the conviction or sentence. **(Clark, 5 Cal.4th at pp. 797-798).**
>
> Petitioner was sentenced on November 12, 2008 It has been seven months since that time and now at this late date the petitioner files additional claims. The petitioner was clearly aware of the claims being made in his writ at an early stage of the proceedings yet he waits seven months to raise them. The petitioner has raised no reasonable explanation of delay.
>
> Regarding the ineffective assistance of counsel claim, the petitioner has failed to establish the basic requirements for success of that claim. A defendant is entitled to a new trial if he received ineffective assistance of counsel at trial.

**(People v. Lagunas (1994) 8 Cal.4th 1030, 1036.)** "Establishing a claim of ineffective assistance of counsel requires the defendant to demonstrate (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient representation prejudiced the defendant, i.e. there is a "reasonable probability" that, but for counsel's failings, defendant would have obtained a more favorable result. The court in **People v. Dennis (1998) 17 Cal.4th 468, 540-541** stated: "Our review is deferential; we make every effort to avoid the distorting effects of hindsight and to evaluate counsel's conduct from counsel's perspective at the time. A court must indulge a strong presumption that counsel's acts were within the wide range of reasonable professional assistance

. . . .

Petitioner was charged with attempted murder with premeditation and deliberation a violation of Penal Code Section 664/187. In addition he was charged with use of a deadly weapon to wit (sic) an automobile a violation of Penal Code Section 12022(b)(1). He was also charged with the additional charge of personal infliction of great bodily injury a violation of Penal Code Section 12022.7. His maximum exposure was 4 years plus life with the possibility of parole.

The prosecutor agreed to accept a plea to violation of Penal Code Section 273.5(a). 12022(b)(1) and 12022.7 for a total exposure of 8 years. The petitioner entered into that plea agreement on August 22, 2008. The petitioner received the sentence he agreed upon and was so sentenced.

The petitioner was fully advised of his rights and consequences of his plea. The petitioner acknowledged his understood his rights and the consequences of his plea and entered into the plea agreement.

The petitioner cannot now come before the court and seek to vacate that plea agreement unless there has been a violation of his constitutional due process rights. No such showing has been made. The petitioner has completely failed to establish any basis for a claim of ineffective counsel.

Accordingly, petitioner's Petition for Writ of Habeas Corpus is denied.

(Lodged Doc. 4.)

   2. <u>Legal Standard</u>

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). <u>Canales v. Roe</u>, 151 F.3d 1226, 1229 (9th Cir. 1998). In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the Court must consider two factors. <u>Strickland v. Washington</u>, 466 U.S. 668 (1984); <u>Lowry v. Lewis</u>, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth

Amendment. Strickland, 466 U.S. at 687. The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 687; see also, Harrington v. Richter, 131 S. Ct. 770 (2011).

Second, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different," Strickland, 466 U.S. at 694. Petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable. Id. at 687. The Court must evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1348; United States v. Palomba, 31 F.3d 1456, 1461 (9th Cir. 1994).

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. at 697. Since the defendant must affirmatively prove prejudice, any deficiency that does not result in prejudice must necessarily fail. However, there are certain instances which are legally presumed to result in prejudice, e.g., where there has been an actual or constructive denial of the assistance of counsel or where the State has interfered with counsel's assistance. Id. at 692; United States v. Cronic, 466 U.S., at 659, and n.25 (1984).

As the Supreme Court reaffirmed recently in Harrington v. Richter, meeting the standard for ineffective assistance of counsel in federal habeas is extremely difficult:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise

> that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." Williams, supra, at 410, 120 S. Ct. 1495, 146 L. Ed. 2d 389. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. 111, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251, 261 (2009) (internal quotation marks omitted).

Harrington v. Richter, 131 S. Ct. at 785-86.

"It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 786. "As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." Id. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.

Accordingly, even if Petitioner presents a strong case of ineffective assistance of counsel, this Court may only grant relief if no fairminded jurist could agree on the correctness of the state court decision.

        3.    <u>Analysis</u>

Petitioner has not met the legal standard to prevail on his ineffective assistance of counsel claims. Upon reviewing the charges and the potential that Petitioner could face life in prison, Petitioner's counsel discussed with him the government's offer of a plea deal into which Petitioner freely agreed to enter. The plea agreement transcript reveals that the Petitioner was advised of "his rights, defenses, and the possible consequences of his plea" and that he was satisfied with his attorney's advice. Defendant also acknowledged that he discussed his possible defenses with his counsel. (Lodged Doc. 1, pp. 83-85.) The record indicates, and the

Court finds, that Petitioner's counsel adequately informed him of the charge to which he pled.

Further, Petitioner's newly appointed counsel was reasonably competent as he made, what appears to this Court to be, the only available argument in the motion to withdraw Petitioner's plea. Counsel's argument was parallel to the claim Petitioner made himself at his Marsden hearing that his guilty plea was the result of his initial attorney's alleged threat of a life sentence.

Counsels' performance was not unreasonably deficient and thus Petitioner failed to meet the two-part Strickland test proving ineffective assistance of counsel. Further, a fairminded jurist could certainly agree on the correctness of the state court decision. Thus, habeas relief is not appropriate in regard to Petitioner's claims of ineffective counsel.

### D.  Claim Four: Certificate of Probable Cause

Petitioner contends that the trial court violated his due process rights by refusing to issue a certificate of probable cause. This claim is without merit. Petitioner was ultimately able to present his constitutional challenges regarding his guilty plea and ineffective counsel to the state courts and to this Court through his habeas corpus petitions. This Court is only concerned with the merits of that challenge, not with the procedural hurdles Petitioner had to overcome in order to exhaust it. Thus, Petitioner is not entitled to habeas relief.

### ORDER

Accordingly, IT IS HEREBY ORDERED:

1) Petitioner's petition for writ of habeas corpus is DENIED;

2) The Clerk of Court is DIRECTED to enter judgment and close the case; and

3) The Court DECLINES to issue a certificate of appealability. 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (in order to obtain a COA, petitioner must show: (1) that jurists of reason would find it debatable whether the petition stated a valid claim of a denial of a constitutional right; and (2) that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. Slack, 529 U.S. at 484. In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable,

E. D. California

-13-

1  wrong, or deserving of encouragement to proceed further. Petitioner has not made the
2  required substantial showing of the denial of a constitutional right. Accordingly, the Court
3  hereby DECLINES to issue a certificate of appealability.

6  IT IS SO ORDERED.

7  Dated:    July 31, 2012                          /s/ *Michael J. Seng*
                                                    UNITED STATES MAGISTRATE JUDGE